# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **NIDA Z. JARAL** | **CIVIL ACTION NO.** |
| **VERSUS** | **22-237-SDD-EWD** |
| **AMICA MUTUAL INSURANCE CO.** | |

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 27, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NIDA Z. JARAL                                                    CIVIL ACTION NO.

VERSUS                                                            22-237-SDD-EWD

AMICA MUTUAL INSURANCE CO.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Based on this Court's independent obligation to ensure its own subject matter jurisdiction, it is recommended[1] that this suit be remanded to the Nineteenth Judicial District for the Parish of East Baton Rouge, State of Louisiana on the Court's own motion based on the failure of Defendant Amica Mutual Insurance Company ("Amica") to show by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional threshold necessary to exercise federal jurisdiction under 28 U.S.C. § 1332.[2]

### I.    BACKGROUND

This is a civil action involving claims for damages allegedly sustained by Jaral in a motor vehicle collision that occurred on January 15, 2021 (the "Accident").[3] Specifically, Jaral claims that she sustained "serious personal injuries," including "cervical and lumbar spine sprain and full disability," when John Hunter ("Hunter") "drove his vehicle into the intersection at Sherwood Common Boulevard and Coursey Boulevard and across her lane of travel, causing her to strike Hunter's vehicle."[4] Because Jaral contends that Hunter's insurance policy limits, which were

---

[1] The Fifth Circuit has held that a "motion to remand is a dispositive matter on which a magistrate should enter a recommendation to the district court subject to de novo review." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016).

[2] Plaintiff Nida Jaral ("Jaral") has also filed a Motion to Remand (R. Doc. 14), which is opposed by Amica (R. Doc. 15). The Motion to Remand is also based on failure to establish amount in controversy, although for somewhat different reasons than those identified in this Report and Recommendation ("R&R"), and provides an alternative basis for remand.

[3] R. Doc. 1-2.

[4] *Id*. at ¶¶ III, VI (cleaned up).

already paid to Jaral, are "inadequate to cover the extent of the damages [she] sustained," her suit seeks to recover based on uninsured/underinsured motorist coverage under the policy issued by Amica covering the car driven by Jaral.[5] On December 1, 2021, Jaral filed a Petition for Damages against Amica in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana.[6] Amica removed the matter on April 11, 2022, asserting federal subject matter jurisdiction under 28 U.S.C. § 1332.[7]

As set forth more fully in the *sua sponte* Order issued by the Court on June 10, 2022 (the "June 10 Order"), the Notice of Removal and supporting documentation[8] did not show that Jaral's damages are likely to exceed $75,000, exclusive of interest and costs.[9] Amica was ordered to file a memorandum and supporting evidence concerning whether the amount in controversy requirement of 28 U.S.C. § 1332 is met.[10] Jaral was ordered to respond to Amica's memorandum regarding the amount in controversy by filing either: (1) a Notice stating that she did not dispute that Amica established the jurisdictional requirements of 28 U.S.C. § 1332, or (2) a Motion to Remand.[11]

---

[5] *Id*. at ¶¶ III – V. *See also* R. Doc. 14-1, p. 2 ("In paragraph V of [Jaral's] original petition, [she] alleges that the at fault driver's insurer paid policy limits…"). Relatedly, Jaral alleges that she was the "operator of a 2013 Infiniti J35 owned by Muddassir Sana." R. Doc. 1-2, ¶ III.
[6] R. Doc. 1-2.
[7] R. Doc. 1, ¶ 9. Jaral's claims in this case assert violations of state law; therefore, this Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331.
[8] The documents appended to the Notice of Removal relevant to Jaral's claims and the amount in controversy include: (a) the Petition (R. Doc. 1-2, pp. 1-3), (b) Jaral's Answers to Interrogatories and Requests for Production of Documents (R. Doc. 1-5), (c) Jaral's medical records (R. Doc. 1-6), and (d) a March 31, 2022 letter from Amica to Jaral requesting that Jaral stipulate her damages do not exceed $75,000, exclusive of interest and costs (R. Doc. 1-7).
[9] R. Doc. 6.
[10] Amica was also ordered to file an Amended Notice of Removal to correct the deficient allegations as to Jaral's citizenship in the Notice of Removal. R. Doc. 6, p. 2. On June 17, 2022, Amica filed an Amended Notice of Removal, which adequately alleged Jaral's citizenship. R. Doc. 12, ¶ 10 (alleging that Jaral is "domiciled in East Baton Rouge Parish, State of Louisiana" and is a citizen of Louisiana). Amica, a corporation, adequately alleges that it is incorporated, and has its principal place of business, in Rhode Island. R. Doc. 1, ¶ 11. No party disputes that the parties are of diverse citizenship.
[11] R. Doc. 6.

2

On June 24, 2022, Amica filed its Supplemental Briefing on Amount in Controversy ("Supplemental Briefing").[12] Jaral responded by filing the Motion to Remand.[13] She argues that remand is appropriate because Amica failed to allege specific facts in the Notice of Removal to show that the amount in controversy—not total damages related to the Accident—exceeds $75,000, exclusive of interest and costs, because Amica does not specify the amount paid by Hunter's insurer, which Jaral contends must be subtracted from total damages to get the amount in controversy.[14] Amica opposes the Motion to Remand, mostly reiterating the arguments in its Supplemental Briefing.[15] However, Amica also argues that the amount paid by Hunter's insurer—$15,000—is "so minimal" that the amount in controversy is still "over $75,000," once that amount is deducted from total damages.[16]

## II. LAW AND ANALYSIS

### A. Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[17] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[18] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[19] The removing party has the burden of proving

---

[12] R. Doc. 13.
[13] R. Doc. 14.
[14] R. Doc. 14-1.
[15] R. Doc. 15, pp. 1-14.
[16] *Id.*, at pp. 14-16.
[17] 28 U.S.C. § 1441(a).
[18] 28 U.S.C. § 1332(a)-(a)(1).
[19] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

federal diversity jurisdiction.[20] Because federal courts are not courts of general jurisdiction, we are to presume that a case is outside our jurisdiction. Accordingly, the removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[21] The Court has a duty to raise the issue of jurisdiction *sua sponte*, as it has done here.[22]

### B. Procedural History Relevant to the Amount in Controversy

The Petition only generally alleges that Jaral suffered "serious personal injuries," including "cervical and lumbar spine sprain and full disability," because of the Accident,[23] and states that Plaintiff has suffered or will suffer the following general categories of damages: (1) past, present, and future medical and medication expenses; (2) past, present, and future lost wages and opportunity costs; (3) past, present, and future pain and suffering and emotional distress; and (4) property damages and/or rental expenses.[24]

In the Notice of Removal, Amica acknowledges that it is not facially apparent from the Petition that Jaral's damages likely exceed $75,000, exclusive of interest and costs.[25] Rather, relying on the general categories of damages claimed in the Petition, information in Jaral's discovery responses and medical records, along with Jaral's failure to stipulate that her damages are not "in excess of $75,000" or that she "will not execute any such judgment in excess of $75,000," Amica argued that it has "met its burden of showing by a preponderance of the evidence

---

[20] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[21] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). ("Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (*quoting In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).
[22] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429 (M.D. La. Nov. 30, 2017), citing *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).
[23] R. Doc. 1-2, ¶¶ III, VI.
[24] *Id*. at ¶¶ VII – VIII, X.
[25] R. Doc. 1, ¶ 7 ("The case started by [Jaral's] Petition for Damages was not removable on its face…").

the amount in controversy is expected to exceed $75,000, exclusive of interest and costs."[26] Specifically, Amica alleged that Jaral's discovery responses and medical records show (1) that Jaral sought treatment from at least four medical providers for injuries purportedly related to the Accident; (2) that Jaral has undergone a lumbar MRI, which showed "broad-based posterior disc herniations at L4-5…along with an L5-S1 broad-based central/left paracentral disc herniation with facet hypertrophy and mild left foraminal narrowing," and (3) that, at the time of her March 14, 2022 discovery responses, which was "nearly fourteen months" post-Accident, Jaral (a) was still in "active treatment for lumbar pathology," "ha[d] not reached maximum medical improvement," and had not been released from medical care by her treating physicians;[27] and (b) had incurred "at least $7,625 in alleged past medical expenses."[28] Lastly, Amica argued that Jaral's failure to "sign[] or return[]" a stipulation asking her to agree that "no such damages at issue [in this matter], exclusive of costs and interest[,] are in excess of $75,000 and that [Jaral] will not execute any judgment in excess of $75,000" is evidence that the amount in controversy is met.[29]

In its Supplemental Briefing, Amica argues that the following are evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs: (1) the lack of an La. Code Civ. P. art. 893 allegation in the Petition, (2) Jaral's refusal to stipulate that her damages do not exceed the jurisdictional threshold, (3) the information regarding Jaral's injuries and treatment in her discovery responses and medical records, and (4) the information in Jaral's June 15, 2022 Initial Disclosures."[30] First, as with the Notice of Removal, Amica relies heavily on Jaral's discovery

---

[26] R. Doc. 1, ¶¶ 12-17.
[27] R. Doc. 1, ¶¶ 14-15; R. Doc. 1-5 (Jaral's discovery responses); R. Doc. 1-6 (Jaral's medical and billing records).
[28] R. Doc. 1, ¶ 14. *See also* R. Docs. 1-5 & 1-6.
[29] R. Doc. 1, ¶ 17.
[30] R. Doc. 13. Although Amica's Supplemental Briefing indicates that Jaral's June 15, 2022 Initial Disclosures are attached as "Exhibit A," no such attachment exists. However, based on the description of the initial disclosures, it appears that Amica is referring to Jaral's portions of the Joint Status Report, which has been filed into to the record and considered. *See* R. Doc. 5, § E(1).

5

responses and medical records. No new discovery responses or medical records were attached to the Supplemental Briefing. Instead, all discovery responses and medical records discussed in the Supplemental Briefing were attached to the Notice of Removal *and* considered by the Court in the June 10 Order. The only "new" information presented in the Supplemental Briefing relevant to the amount in controversy is what is contained in Jaral's June 15, 2022 Initial Disclosures—*i.e.*, Section E(1) of the Joint Status Report.[31] There, Jaral summarizes her injuries, notes she is still treating, and that she has incurred "known medicals of $7,890.00 to date."[32] She also cites two Louisiana cases she contends provide that the "range of general damages for a disc bulge or protrusion is between $45,000.00 and $75,0000."[33] Amica contends that the statements in the Joint Status report show that Jaral is "specifically stating that the damages could be higher than $75,000."[34] Lastly, relying on general damages awards exceeding $75,000 from Louisiana state courts involving injuries purportedly similar to Jaral's, Amica contends "it is clear…that this case will likely exceed the amount in controversy of $75,000."[35]

---

[31] R. Doc. 13, pp. 3-4. *See also* R. Doc. 5, § E(1).
[32] R. Doc. 5, § E(1). *See also* R. Doc. 13, pp. 3-4.
[33] R. Doc. 5, § E(1), citing *Mixter v. Wilson*, 54 So.3d 1164 (La.App. 5 Cir. 12/14/10) and *Locke v. Young*, 973 So.2d 831 (La.App. 2 Cir. 12/12/07).
[34] R. Doc. 13, pp. 2-4. Specifically, Amica contends that Jaral's statements in the Status Report—namely, that her "known medicals to date are $7,890" and that the "range of general damages for a disc bulge or protrusion [are] between $45,000 and $75,000"—should be "treated as a de facto admission by [Jaral] that this case *will likely exceed* $75,000." *Id*. at p. 7 (emphasis added). There are several problems with Amica's argument. First, Amica is conflating *could exceed* with the actual standard, which is *will likely exceed*. While it is true that, based on the quantum cases cited by both parties, a factfinder *could* award Jaral damages exceeding $75,000 after discovery and a trial, these cases do not show *at this time* that Jaral's damages will *likely* exceed $75,000. *See Haile v. Walmart, Inc.*, No. 19-467, 2021 WL 7084691, at n. 1 (M.D. La. Apr. 23, 2021) ("Certainly, Plaintiffs' alleged injures create the possibility for a claim in excess of $75,000. The mere *potential* for recovery in excess of the jurisdictional minimum, however, is not enough." (emphasis in original)). Second, Amica conspicuously ignores the lower end of Plaintiff's cited general damages range ($45,000) in making its argument. Inserting this figure into Amica's formula (potential general damage award from Louisiana cases + past medical expenses) shows that it is possible a factfinder could award Jaral only $52,890, which is far less than the jurisdictional minimum.
[35] R. Doc. 13, pp. 8-14. Relatedly, Amica argues that "this case is identical to *Thomas* [*v. Louis Dreyfus Commodities, LLC*, 2016 WL 1317937 (M.D. La. Mar. 11, 2016), *report and recommendation adopted,* No. 15-394, 2016 WL 1337655 (M.D. La. Apr. 1, 2016),] and should be treated the same." *Id*. A cursory review of *Thomas* shows that it is distinguishable for several reasons. First, the *Thomas* plaintiff was claiming $26,637.57 in past medical expenses, which is nearly 3.5 times the amount of past medical expenses Jaral is claiming. Second, there was "no dispute" amongst the *Thomas* parties that the plaintiff "ha[d] been diagnosed as having suffered at least one herniated or bulging

6

On July 7, 2022, Jaral filed the Motion to Remand, which Amica opposes.[36]

### C. Amica Has Failed to Establish that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.[37] When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.[38] The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[39]

Since it is not facially apparent from the Petition that Jaral's damages will likely exceed the federal jurisdictional amount, as Amica conceded,[40] the Court must next consider whether Amica met its burden of establishing by a preponderance, through summary judgment-type

---

lumbar disc *and post-concussive syndrome with headaches after the accident*." Here, while §E(1) of the Status Report mentions "post traumatic headache," argument of counsel are not evidence. Regardless, the medical records attached to the Notice of Removal are much less conclusive regarding headaches. *See, e.g.*, R. Doc. 1-6, p. 5 (July 29, 2021 Initial Evaluation indicating that within a "day or so" of the collision, Jaral "had headaches and neck pain"); *Id*. at pp. 20-22 (January 25, 2021 Patient Symptom History form where the "headache" section is completely blank); *Id*. at pp. 23-25 (undated Automobile Accident Questionnaire, where the box next to "head" is unchecked); *Id*. at p. 63 (January 15, 2021 Physical Therapy Evaluation noting that Jaral had a "mild H[eadache]"). In any event, the record is devoid of any diagnoses of post-concussive syndrome. Third, the *Thomas* plaintiff "acknowledged that he believes that based on his injuries, the amount in controversy requirement is satisfied." 2016 WL 131937, at *5. Conversely, Jaral has, at most, conceded that total damages could exceed $75,000 before the amount paid by Hunter's insurer's is accounted for. At no point has Jaral admitted that the amount in controversy in this case exceeds the jurisdictional minimum. Lastly, as Amica acknowledges, the Court is familiar with *Thomas*, which (1) notes that "[t]his court recognizes that whether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended," but also (2) notes that, based on a survey of Louisiana cases, general damages awards for herniated discs without surgical recommendations and/or treatment could meet or exceed the jurisdictional minimum. However, as explained below, pointing to general damages awards exceeding $75,000 in Louisiana cases involving purportedly similar injuries is not sufficient to establish the amount in controversy by a preponderance of the evidence where, as here, there is not sufficient information to adequately compare the cases.

[36] *See* R. Docs. 14 & 15.
[37] La. Code Civ. P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
[38] *Luckett*, 171 F.3d at 298, citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).
[39] *Luckett*, 171 F.3d at 298, quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
[40] R. Doc. 1, ¶ 7 ("The case started by Plaintiff's Petition for Damages was not removable on its face, as Plaintiff made no specific allegations regarding Plaintiff's alleged injuries and/or damages, and, moreover, the Petition alleges that the full extent of damages are 'unknown at this time.'").

evidence, that the amount in controversy in this case is likely to exceed $75,000, exclusive of interest and costs. Regarding summary judgment-type evidence, Amica relies heavily on Jaral's post-Accident but pre-removal medical records.[41] However, Amica's reliance on these records to establish the amount in controversy is misplaced for several reasons.

First, Amica relies on the information in Jaral's discovery responses and medical records, as well as the Joint Status Report, regarding the specific nature of the "severe personal injuries" suffered by Jaral and her treatment for same. Jaral's injuries include: (1) "injuries to her neck, back, shoulder and knee," including "sprains of the cervical, thoracic, and lumbar spine, cervical radiculopathy, lumbosacral radiculitis, post traumatic headache, muscle spasms at multiple sites, and…disc protrusions at L4-L5 and L5-S1";[42] and (2) as revealed by a May 3, 2021 lumbar MRI, "broad-based posterior disc herniations at L4-5…along with an L5-S1 broad-based central/left paracentral disc herniation with facet hypertrophy and mild left foraminal narrowing."[43] For these injuries, Jaral has undergone some treatment with several medical providers[44] and a lumbar MRI,[45] and has incurred "at least $7,625 in alleged past medical expenses" in the fourteen months following the Accident.[46] According to both parties, Jaral was still treating (as of June 2022) for injuries she relates to the Accident. Despite this, Jaral's medical records—and the record as a whole—contain little information about Jaral's prognosis and recommended future treatment. There is no surgery recommendation (or even a recommendation for less invasive treatments such as epidural steroid injections, radio frequency ablations, etc.) in the record for Jaral. Indeed, in a July 29, 2021 medical record, one of Jaral's treating physicians states: "I see no indication for any

---

[41] *See, generally*, R. Docs. 10-4, 10-5, and 10-6.
[42] R. Doc. 5, §§ B(1) and E(1).
[43] R. Doc. 1, ¶¶ 14-15; R. Doc. 1-6, pp. 6-9.
[44] *See* R. Docs. 1-2, 1-5, 1-6, & 1-7.
[45] R. Doc. 1-6.
[46] *See* R. Docs. 1-5 & 1-6.

surgical intervention at this point."[47] Notably, this information was attached to, and discussed in, the original Notice of Removal and, as explained in the June 10 Order, is insufficient.

Critically, Amica has not provided the Court with any new summary judgment-type evidence—medical or otherwise—about Jaral's injuries, prognosis, or treatment, despite the opportunity to do so afforded by the June 10 Order. While there is new information regarding Jaral's medical expenses, that information shows that between March 14, 2022 (the date of Jaral's discovery responses) and June 8, 2022 (the date of the Status Report), Jaral's known medical expenses increased by *only* $265 despite "ongoing treatment."[48] Jaral's injuries and treatment, even as documented in the evidence submitted with the Notice of Removal, are not sufficient to establish that Jaral's damages meet the jurisdictional threshold, particularly considering that Jaral's documented past medical expenses for nearly sixteen months of treatment amount to only about $7,900, and there is little information about the need for future treatment and no information about the associated costs. Although the information in Jaral's medical records indicate that the primary medical issue for Jaral involves bulging/herniated discs and resulting complications, in addition to the lack of a surgical recommendation, there is no evidence of recommendations for epidural steroid injections, radio frequency ablations, or any other type of procedure, at the time of removal.

At most, Jaral has had several months of conservative treatment consisting of doctor visits, a lumbar MRI, and chiropractic treatment and physical therapy, incurring just under $8,000 in medical expenses, which is insufficient to reach the jurisdictional threshold. There is ample authority from this Court and others in this Circuit that removing defendants fail to establish the

---

[47] R. Doc. 1-6, p. 7.
[48] *Compare* R. Doc. 1, ¶ 14 (alleging that Jaral is claiming "at least $7,625 in alleged past medical expenses as of the time [of her March 14, 2022 discovery responses]) *with* R. Doc. 5, § E(1) (alleging that Jaral's known medical expenses as of June 8, 2022 are $7,890).

9

jurisdictional threshold when alleging similar injuries, treatment, and medical expenses.[49] In *Cole,* this Court noted: "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal."[50] Even for herniated discs, "[t]his court recognizes that '[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended.'"[51] "Accordingly, courts have found the lack of a recommendation for surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record."[52]

---

[49] *See, e.g., Cole v. Mesilla Valley Transportation,* No. 16-841-SDD-RLB, 2017 WL 1682561, at *6 (M.D. La. Mar. 15, 2017), report and recommendation adopted*, No. 16-841-SDD-RLB, 2017 WL 1684515 (M.D. La. May 1, 2017) (holding that the plaintiff's medical expenses of $7,318 at the time of removal [which is slightly less that Jaral's medical expenses here], with the possible additional cost of an MRI, physical therapy, and a recommendation for epidural steroid injections, along with several lumbar disc bulges, was not sufficient for federal jurisdiction).

[50] *Cole*, 2017 WL 1682561, at *5, citing *Barrow v. James River Insurance Company*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1); *McCain v. Winn-Dixie Montgomery, LLC*, No. 16-1546, 2016 WL 2908418 (E.D. La. May 19, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $6,384 in medical expenses at time of removal, and medical records indicated annual cervical bulges at C4-5, C5-6, and C6-7; exacerbation of several preexisting lumbar disc herniations; and other injuries to wrist and hip); *Robichaux v. Wal-Mart Stores, Inc.*, No. 16-1786, 2016 WL 1178670 (E.D. La. Mar. 28, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $7,555 in medical expenses at time of removal, and MRI demonstrated that the plaintiff had a "mild bilateral facet arthropathy at L3-4, bilateral facet arthropathy and a circumferential broad based posterior disc bulge with resultant mild central canal stenosis and bilateral foraminal narrowing at L4-5, and mild bilateral facet arthropathy at L5-S1"); *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351 (E.D. La. Mar. 16, 2016) (amount in controversy not satisfied where plaintiff incurred $1,948 in medical expenses at time of removal, and MRI tests indicated plaintiff had "lumbar facet arthrosis at L3-4 and L4-5 with bulging at L3-4 with annulus fibrosus tear with bulging at L5-S1 and L2-3 and L4-5"); *Arnold v. Lowe's Home Centers, Inc.*, No. 10-4454, 2011 WL 976512 (E.D. La. Mar. 16, 2011) (amount in controversy not satisfied where slip-and-fall plaintiff incurred approximately $12,000 in medical expenses at time of removal, and suffered a herniated disc at C3-4 for which epidural steroid injections were prescribed).

[51] *Thomas*, 2016 WL 1317937, at *4 (M.D. La. Mar. 11, 2016), citing *Robinson v. Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), report and recommendation adopted, 2011 WL 2937952 (M.D. La. July 14, 2011).

[52] *Thomas*, 2016 WL 1317937 at *4: "*See, e.g., Hebert v. Hanco Nat. Ins. Co.*, No. 07–362, 2009 WL 255948, at *4–5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff 'suffers from a herniated disc, without any recommendation for surgery' and the plaintiff 'continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish'); *Espadron v. State Farm Mut. Auto. Ins. Co.*, No. 10–53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a 'herniated cervical disc [or] segmental cervical instability' and a 'herniated lumbar disc [or] segmental lumbosacral instability'

Significantly, there is nothing in the record indicating that Jaral was recommended for—much less underwent—any procedure or surgery after the Accident. The limited summary judgment-type evidence relating to Jaral's injuries reflects only minimal medical expenses, an MRI, and treatment with several doctors, and chiropractic treatment and physical therapy,[53] but this type of conservative treatment does not meet the jurisdictional threshold.[54] Critically, despite assertions by both parties of "ongoing treatment," Jaral's medical expenses by a mere $265 in the three months between her discovery responses (March 14, 2022) and the filing of the Joint Status Report (June 8, 2022).[55] Furthermore, while the Petition demands "lost wages" and "loss of earning capacity,"[56] there is no evidence of the amount of Jaral's lost wages or inability to work, how many days of work she missed, if any, or whether she is working/can work.[57] In fact, Plaintiff's discovery responses, which Amica has submitted as evidence of amount in controversy, say that Plaintiff is not seeking to recover for loss of earnings as a result of the Accident.[58] Likewise, there is no evidence of the property damages and/or rental expenses Jaral claims she sustained as a result of the Accident.[59]

Second, in support of its arguments (1) that it is "clear from Louisiana case law" the amount in controversy requirement is met, and (2) that a surgical recommendation is not required to establish amount in controversy, Amica refers the Court to multiple Louisiana state court cases

---

and was a 'potential surgical candidate' and plaintiff stipulated that his damages did not exceed $50,000). There is no evidence in the record that Plaintiff's physicians have recommended him to undergo surgery for his bulging discs."
[53] *See* R. Docs 1-5 & 1-6.
[54] *See Cole,* 2017 WL 1682561, at *5 and cited cases, discussed *supra.*
[55] *See* footnote 49, *supra*.
[56] R. Doc. 1-2, ¶ VII.
[57] *See, generally*, R. Docs. 1 & 12, and attachments.
[58] *See* R. Doc. 1-5, pp. 3-4. Plaintiff responds "None" to the Interrogatories requesting that she provide that names and addresses of all employers at the time of the Accident and for the preceding ten years, identify any past or future lost earnings, and describe any additional financial losses. Her discovery responses indicate that Plaintiff is not seeking to recover non-medical financial losses in this case, notwithstanding the boilerplate allegations of damages in the Petition.
[59] *Id*.

11

where general damages awards for disc herniations without surgery exceed $75,000."[60] Those cases are of little utility at this juncture because "a simple recitation of cases where plaintiffs have been awarded damages that would exceed the federal jurisdictional amount are not sufficient to establish the amount in controversy."[61] Indeed, the cases relied on by Amica involve damage awards made by a judge or jury *after* a full trial on the merits, which is not the same as the relevant inquiry here—*i.e.*, whether Amica has shown by a preponderance of the evidence that Jaral's claims *at the time of removal* are likely to exceed $75,000, exclusive of interest and costs.[62] As

---

[60] R. Doc. 13, pp. 7-14. *See also* R. Doc. 15, pp. 7-14.

[61] *Brown v. Protective Ins. Co.*, No. 19-13710, 2020 WL 104299, at *4 (E.D. La. Jan. 9, 2020) (citations omitted) (emphasis in original) ("However, other damages awards based on highly individualized facts and determined after a trial on the merits are insufficient to establish that, based on the jurisdictional facts that existed here at the time of removal, subject matter jurisdiction exists. Protective Insurance Company 'must do more than merely show that plaintiff could recover more than the jurisdictional amount' to satisfy its burden. Rather, Protective Insurance Company must point to facts *in this case* that establish that the actual amount in controversy exceeded $75,000. Despite Protective Insurance Company's argument that the categories of damages that Plaintiffs list could potentially bring the amount in controversy over $75,000, the Fifth Circuit has explained that '[a] 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely or not' standard,' and is therefore an improper standard when assessing the amount in controversy."). *See also Silva v. Hartford Ins. Co. of the Midwest*, No. 15-5844, 2016 WL 4501288, at *5 (E.D. La. Aug. 29, 2016) ("Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts in this case that establish that the actual amount in controversy exceeded $75,000. Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal. This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with 'similar' injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement."); *Barrow*, 2017 WL 656725, at *3 (accord).

[62] Even if the Court were to consider the cases relied on by Amica, those case are still insufficient to establish the amount in controversy here as they are distinguishable, especially considering the limited information about Jaral's injuries, prognosis, and treatment in the record. A cursory review of those cases shows that those plaintiffs had much longer and/or more extensive treatment histories than the Jaral, incurred more medical expenses, and/or suffered from additional injuries that are not present here. For example, in *Locke v. Young*, 973 So.2d 831 (La.App. 2 Cir. 12/12/07), a case Amica claims "do[es] not adequately reflect nor [is] similar to our case" but yet includes later in a string cite of cases for the proposition that Louisiana courts award general damages equal to $75,000 in cases involving herniated discs without surgery (*compare* R. Doc. 13, p. 7 *with* p. 13), plaintiff was awarded $3,835,352 in general and special damages after a bench trial, which was affirmed on appeal, subject to several reductions in specific awards, such as the $150,000 award for two bulging discs being reduced to $75,000. The evidence at trial showed that plaintiff, a "serious bodybuilder," who was riding a motorcycle, collided with another vehicle and sustained multiple serious injuries, including: (1) a "right open knee dislocation," which one doctor described as an injury "in which the lower leg and the upper leg were no longer together, with a small skin bridge connecting the thigh to the lower leg," which, despite doctors' initial concerns that they could not save the leg, was operated on the day after the collision, again two days later, and twice more prior to trial "and the evidence indicate[d] that he will require more," including at least one total knee replacement; (2) a "fracture of the anterior distal tibia at the ankle joint," which required surgery about a

noted by the United States District Court for the Eastern District of Louisiana, Amica "must do more than merely show that plaintiff could recover more than the jurisdictional amount" to satisfy its burden.[63] Amica "must point to facts **in this case** that establish that the actual amount in controversy exceeded $75,000."[64]

Lastly, neither Jaral's failure to include a La. Code Civ. P art. 893 allegation in her Petition,

---

month after the accident and would require either an ankle fusion or ankle joint replacement; (3) an injury to plaintiff's hands which was repaired with pins only to "re-dislocate[] and heal" after they were removed; (4) a radial head fracture, which would more probably than not require a radial head resection within 5-10 years; (5) two bulging discs for which surgery was a "distant probability"; and (6) cerebral brain dysfunction. Complications from those injuries included arthritis, scars, a limp due to one leg being shorter than the other post-injury, and atrophied extremities, among other things. As a result, Plaintiff was awarded $177,852 in past medical expenses, $500,000 in future medical expenses, $107,500 in past lost wages, and $1,100,000 for future lost wages and loss of earning capacity, plus general damages awards for each specific injury.) *See also, e.g.*, *Hebert v. Boesch*, 194 So.3d 798 (La.App. 1 Cir. 6/3/16) (plaintiff, who (a) sustained injuries to his "back, neck, and shoulders," including two bulging discs and cervical radiculopathy, and for which he testified at trial that "he had never suffered" before the accident; and (b) treated "sporadic[ally] and conservative[ly]" with his primary care physician, a chiropractor, and an orthopedic surgeon, who recommended "epidural steroid injections in [plaintiff's] spine," but plaintiff declined, was awarded $75,000 in general damages, plus $15,290.98 in past medical expenses and $262.50 in lost wages, after a bench trial); *Smith v. Goetzman*, 720 So.2d 39 (La.App. 1 Cir. 9/25/98) (plaintiff, who (a) injured his back and leg in an accident; (b) treated with orthopedic surgeons, a chiropractor, a clinical psychologist, and a neurosurgeon for months and was still treating at the time of trial, (c) underwent a CAT scan and MRIs that showed two protruding and/or bulging discs; (d) treated with a clinical psychologist, who diagnosed plaintiff with "clinical depression stemming from…his injury and the pain resulting from it, as well as his feeling of betrayal and anger over his firing" after the accident; and (e) reported "suicidal feelings" during his treatment with a clinical psychologist, was awarded $193,657.47 (after reduction for comparative fault), which included $80,000 in general damages (consisting of $50,000 for pain and suffering, $25,000 for permanent disability, and $5,000 for mental anguish and/or loss of enjoyment of life), $45,000 in past lost wages, $50,000 in future lost income/earning capacity, and $15,000 in future medical expenses, after a jury trial); *Martin v. ERMC, II*, 23 So.3d 1008 (La.App. 3 Cir. 11/4/09) (jury awarded plaintiff, who was struck by a golf cart and diagnosed with a cervical and lumbar strain, possible underlying spinal pathology, associated headaches, possible median neuropathy at the right wrist, a contusion on the right forearm, and spasms in the upper back, which were treated with over the course of 23 months with physical therapy, medication, and steroid injections, was awarded general damages totaling $103,000, which consisted of $50,000 in pain and suffering, $40,000 in loss of enjoyment, but only $13,000 for physical injury. However, plaintiff was also awarded $17,134 in past medical expenses and $30,000 in past lost wages. In affirming the jury's general damage award, the Louisiana Third Circuit noted that the award was "on the high end of such awards" but declined to reduce the award because the "jury was required to assess the credibility of the witnesses very carefully to determine the extent of the plaintiff's [largely subjective] injuries."). It is also unclear why Amica cited certain cases, as its own summary shows those cases are distinguishable from this one. *See, e.g.*, R. Doc.13, p. 12 (noting that the plaintiff *Martin*, 23 So.3d 1008, *treated for 23 months and received injections*), pp. 12-13 (noting that the plaintiff in *Fox v. Anderson*, 924 So.2d 399 (La.App. 3 Cir. 3/1/06) *received several lumbar injections*), p. 13 (noting that the plaintiff in *Cosey v. Jenkins* (citation not provided) was *awarded $55,667 in past medicals*), p. 13 (noting that the plaintiff in *Glasper v. Henry*, 589 So.2d 113 (La.App. 4 Cir. 1991) suffered disc injuries *that caused a 15% total body impairment*) (emphasis added). Amica also relies on *Zito v. J.C. Penney Services, L.L.C.*, No. 18-684, 2019 WL 2396176 (M.D. La. Jan. 22, 2019), a case from this Court, for the proposition that herniated discs, which Plaintiff has, may result in greater damage awards than bulging discs. R. Doc. 13, p. 11. While that is true, Amica ignores its burden to show on the facts of *this* case that Plaintiff's damages are likely to exceed $75,000, exclusive of interests and costs.

[63] *Silva*, 2016 WL 45012888, at *5. (E.D. La. ). *See also Barrow*, 2017 WL 656725, at *3 (accord).
[64] *Id*. (emphasis added).

nor her failure to stipulate that her damages do not exceed $75,000, exclusive of interest and costs, are sufficient to establish the amount in controversy. There is ample authority from this Court and others within this Circuit holding that, while the failure to include an Article 893 allegation and/or a plaintiff's refusal to stipulate that their damages do not exceed the jurisdictional threshold are entitled to some consideration, they are not dispositive of the amount in controversy.[65] In any case, even affording some weight to Jaral's failure to include an Article 893 allegation in her Petition and her failure to stipulate that her damages do not exceed $75,000,[66] exclusive of interest and costs, those actions—when considered alone or in tandem—are not sufficient to sustain Amica's burden, in light of the low amount of Jaral's medical expenses at the time of removal for over a year of conservative treatment, with no evidence of the extent or cost of future treatment, if any, and no evidence of lost earnings or other non-medical expenses.[67]

---

[65] *See, e.g., Demoulin v. Labor Smart, Inc.*, No. 17-115, 2017 WL 2471057, at *3 (M.D. La. May 19, 2017), report and recommendation approved, No. 17-115, 2017 WL 2468796 (M.D. La. June 7, 2017) ("This Court has previously held that the 'absence of such a statement in the Petition may be considered in determining whether the amount in controversy is sufficient.'"); *Weber v. Stevenson*, No. 07-595, 2007 WL 4441261, at *4 (M.D. La. Dec. 14, 2007) ("'[T]he court finds that the plaintiffs' failure to follow La. C.C.P. art. 893(A)(1)'s mandate, while entitled to some consideration, in and of itself is not determinative of the amount in controversy.'"); *Ford v. State Farm Mut. Auto. Ins. Co.*, No. 08-403, 2009 WL 790150, at *4 (M.D. La. Mar. 25, 2009) ("[A]ll three U.S. District Courts in the State of Louisiana have recognized that the failure to include an Article 893 stipulation alone is insufficient to establish that the jurisdictional minimum is in controversy."). *See also, e.g., Johnson v. Petsmart, Inc.*, No. 16-3448, 2017 WL 360265, at *5 (E.D. La. Jan. 25, 2017) *and id.* at n. 83 ("See *Aldrich v. DBP Holding Corp.*, No. 13-5729, 2014 WL 2215707 (E.D. La. May 28, 2014) (plaintiff's failure to stipulate damages 'is not conclusive evidence that a claim exceeds $75,000'); *Buchana v. Wal-Mart Stores, Inc.*, No. 99-2783, 1999 WL 1044336 at *3 (E.D. La. Nov. 17, 1999) ('Although some courts have considered failure to stipulate in deciding whether to remand, courts in this district and others have found that factor alone does not satisfy a defendant's burden.').").

[66] Assuming Jaral's failure to return Amica's requested stipulation by its unilaterally imposed deadline is a "refusal" to stipulate, this Court has also consistently found that a plaintiff's refusal to stipulate that damages do not likely exceed $75,000 is not sufficient to establish to establish amount in controversy. *See, e.g., McClay v. DG Louisiana, LLC*, No. 20-59, 2021 WL 3237313, at *9 (M.D. La. June 11, 2021) ("Finally, while Plaintiff refused to enter into the stipulation proffered by Defendant that her damages were less than $75,000, that information alone is not enough to establish the jurisdictional minimum."); *Shelton v. Hallmark Trucking Ins. Co.*, No. 17-1683, 2018 WL 1998341, *3 (M.D. La. Mar. 27, 2018) ("This court has previously explained that the failure to execute a stipulation is but one factor for the court to consider in its amount in controversy analysis."); *Cage v. Hobby Lobby Stores, Inc.*, No. 14-58, 2015 WL 803120, at * 4 (M.D. La. Feb. 25, 2015) (explaining that court "may consider the Plaintiff's refusal to sign the stipulation [that the amount in controversy was less than $75,000] as a factor in determining whether Defendant has met its burden of proof.") (citing *Lipford v. Boehringer Ingelheim Pharm., Inc.*, No. 13-2858, 2014 WL 458359, at * 5 (W.D. La. Feb. 4, 2014)). *See also* R. Doc. 6, p. 5, n. 22.

[67] Amica also relies on a statement from *Wornner v. Christian Home Health*, No. 13-6416, 2014 WL 130331 (E.D. La. Jan. 14, 2014) for the proposition that the failure to include an 893 allegation "creates a 'strong presumption' in

14

Any doubt about the existence of subject matter jurisdiction is resolved in favor of remand.[68] The amount in controversy is not facially apparent from the Petition and, despite the opportunity to submit additional evidence, Amica has not met its burden of proving by a preponderance of the evidence that the amount in controversy likely exceeds $75,000, exclusive of interest and costs.[69] Accordingly, this matter should be remanded to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana on the Court's own motion.[70]

## III.  RECOMMENDATION

The documents submitted in support of removal and in response to the Court's June 10 Order *sua sponte* questioning subject matter jurisdiction, show only conservative treatment totaling less than $8,000, and no surgical recommendation, although the Accident at issue occurred nearly fifteen months before removal. There is no evidence of other damages, such as lost wages, and the cases upon which Amica relies are not persuasive and/or are distinguishable. Under these facts, Amica has not carried its burden to establish the Court's subject matter jurisdiction.

As doubts about the propriety of removal are resolved in favor of remand, **IT IS RECOMMENDED** that this matter be **REMANDED** to the Nineteenth Judicial District Court

---

favor of jurisdiction." R. Doc. 13, p. 4, n. 17. First, *Worner*, a case from another court, is not controlling. As noted above, this Court has consistently held that the lack of an 893 allegation is only entitled to some consideration. Additionally, the *Wornner* case cites to *Raggio, Cappel, Chozen & Berniard v. Hartford Steam Boiler Inspection & Ins Co.*, No. 06-1981, 2006 WL 4059093 (W.D. La. Dec. 29, 2006), in support of the statement regarding the presumption associated with the lack of an 893 allegation. In *Raggio*, the court noted that plaintiff had claimed property damages and lost income of more than $50,000, which, coupled with the demand for fees and penalties, easily established an amount in controversy above $75,000.

[68] *Gasch*, 491 F.3d at 281-82. *See also Manguno*, 276 F.3d at 723 ("[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

[69] "Because Defendant has not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount." *Medina v. Allstate Vehicle and Property Insurance Company*, 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).

[70] The law firm representing Amica has had at least one other case remanded for failure to establish amount in controversy under similar facts in the last year and is encouraged to carefully consider whether arguments that have previously been rejected by this Court constitute a good faith basis for removal in the future. *See Taylor v. Old Republic Insurance Company*, No. 21-369-BAJ-EWD, 2022 WL 264887 (M.D. La. Jan. 6, 2022).

for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction on the Court's own motion. Alternatively, it is recommended that the Motion to Remand,[71] filed by Plaintiff Nida Jaral, be **GRANTED**.

Signed in Baton Rouge, Louisiana, on February 27, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[71] R. Doc. 14.